# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVAN ROLDAN,<br><br>         Petitioner,<br><br>v.<br><br>WARREN L. MONTGOMERY, Warden,<br><br>         Respondent. | Case No.: 18cv2006-JAH(RBB)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: GRANTING MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS [ECF NO. 9]** |

  Ivan Roldan, a state prisoner proceeding pro se and in forma pauperis, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 against Respondent Warren L. Montgomery, Warden of Calipatria State Prison [ECF No. 1]. On February 20, 2019, Respondent filed a Motion to Dismiss Petition for Writ of Habeas Corpus [ECF No. 9], with an attached Memorandum of Points and Authorities [ECF No. 9 Attach. #1], and a Notice of Lodgment [ECF No. 10]. Petitioner did not file an opposition. For the reasons set forth herein, the Court **RECOMMENDS** that Respondent's motion to dismiss be **GRANTED** and the petition be **DISMISSED** with prejudice.

/ / /

/ / /

/ / /

# I. FACTUAL BACKGROUND

Petitioner was convicted of murder, three counts of attempted murder, and assault with force likely to produce great bodily injury in 1997. (Not. Lodgment Attach. #1 [Legal Status Summary], at 1, ECF No. 10.)[1] He was sentenced to a prison term of seventy-nine years to life with the possibility of parole. (Id.)

The following factual summary is taken from Correctional Lieutenant P. Zills's July 18, 2016 report:

> On Monday, July 18, 2016, at approximately 1115 hours, Officer D. Acosta (A5 Floor Officer #1) and Officer R. Dubbe (A5 Floor Officer #2) were conducting a search of cell A1-235, jointly assigned to Inmate ALDANA (P28828, A1-235L) and Inmate ROLDAN (K57092, A1-235U). During the course of the search, Officer Acosta discovered a bindle wrapped in paper and clear plastic. Upon opening the bindle there were numerous other bindles containing black tar like substance. Officer Acosta took the bindles to the Sub-Evidence Room #430-144 for weighing and testing. Officer Acosta then relinquished the bindles to Officer J. Manning (Facility 'A' Security Officer #2) for testing of the substance, which tested positive for Heroin. There were a total of 11 individual smaller bindles within the one bindle discovered, with a total weight of 5.47 grams with packaging. [¶] In addition to the discovery of the suspected controlled substance[,] Officer Dubbe discovered a cellular telephone.
>
> . . . .
>
> Officer Manning, after testing the substance, approached Inmate ALDANA with the results of the testing. Inmate ALDANA refused to accept the results from the Narcotics Identification Kit (NIK) Test. [¶] Officer Manning, after testing the substance, approached Inmate ROLDAN with the results of the testing. Inmate ROLDAN refused to accept the results from the NIK Test. [¶] Officer Manning ordered both inmates to submit urine samples for testing for the presence of a controlled substance[;] both inmates refused to submit urine samples for testing. [¶] CAL Medical Staff completed a medical evaluation on Inmate ALDANA and Inmate ROLDAN.

---

[1] The Court cites to documents as paginated on the electronic case filing system.

(Not. Lodgment Attach. #2, In re Roldan, No. S245962 (Cal. Sup. Ct. [filed Dec. 13, 2017]) (petition for writ of habeas corpus), at 21, ECF No. 10.) Prison officials charged Petitioner with violating section 3016(a) of Title 15 of the California Code of Regulations for "Possession of a Controlled Substance for Distribution (Heroin)" and issued a Rules Violation Report ("RVR"). (Id. at 23, 43-47.)

Senior Hearing Officer J. Coronado conducted a disciplinary hearing on September 18, 2016. (Id. at 49.) He noted that Roldan had received all pertinent documents, including a preliminary copy of the RVR, within the requisite deadlines, but the hearing did not take place within thirty days of the issuance of RVR. (Id. at 39, 49.) The hearing officer accordingly found a due process violation resulting from not meeting the thirty-day time requirement and determined that Roldan would not be assessed any loss of credits. (Id. at 49, 57.)[2]

Petitioner called his cellmate, Victor Aldana, as a witness at the hearing. (Id. at 57.) Upon questioning by Petitioner, Aldana testified that the contraband found in the cell belonged to him and that Roldan was not aware of it. (Id.) Aldana also stated that he had purchased the drugs three days prior to the cell search, kept the drugs in a coffee jar in his locker for personal use, and used drugs daily. (Id.)

Petitioner was questioned by the hearing officer and testified as follows:

    Q    Whos[e] drugs were found in your cell?

    A    My cellies [sic], I had no knowledge there were drugs till the cops told me.

    Q    Do you have priors for drugs?

    A    No.

    Q    Did you know your cellie is a drug user?

---

[2] The hearing was actually held on the thirtieth day following the issuance of the RVR. Nevertheless, the hearing official automatically marked the RVR as not meeting the thirty-day deadline. (Not. Lodgment Attach. #2, In re Roldan, No. S245962 (Cal. Sup. Ct. [filed Dec. 13, 2017]) (petition for writ of habeas corpus), at 39, ECF No. 10.)

|   |   |   |
|---|---|---|
| 1 | A | Yes. |
| 2 | Q | How long did you live with your cellie? |
| 3 | A | A couple of years. |

(Id.) The hearing officer noted that Roldan, in fact, had two prior drug offenses. (Id.) Petitioner pleaded not guilty to the charge and stated, "I had no knowledge of what the cops found in my cell that day." (Id.)

Hearing officer Coronado found Petitioner guilty of distribution of a controlled substance based on a preponderance of the evidence. (Id. at 57, 63.) As punishment, Roldan was confined to quarters for ten days, placed in Privilege Group C[3] for thirty days, and was assessed ten days loss of yard recreation privileges, one year loss of visiting privileges, and two years loss of contact visiting privileges. (Id. at 59, 61.) Petitioner was also required to submit to four random drug tests per month for one year. (Id. at 61.) Coronado also referred Petitioner to the classification committee because this was his third or more drug offense; Roldan was assessed 365 days job removal from September 18, 2016 through September 18, 2017. (Id.)

## II.  PROCEDURAL BACKGROUND

Petitioner filed an administrative appeal of the decision on or about March 23, 2017, in which he argued that he could not be guilty of distribution of a controlled substance because his cellmate had accepted responsibility for the drugs. (Id. at 71, 75.) Roldan also argued that he had no control over what his cellmate brought into the cell. (Id. at 75.) He requested that the charge either be dropped to possession or dismissed altogether. (Id.) Petitioner was permitted to bypass the first level of review of the prison's three-tiered review system. (Id. at 71.) On May 11, 2017, his appeal was denied at the second level of review. (Id. at 81.) The second level reviewer, Chief Deputy

---

[3] Inmates in Privilege Group C are not permitted family visits, have a reduced canteen draw, may receive telephone calls on an emergency basis only, have limited yard access, and may not receive packages. Cal. Code Regs. tit. 15, § 3044(f)(2)(A)-(E) (2019).

Warden B. Hedrick, stated that the cellmate's claim of ownership of the narcotics found did not eliminate Roldan's responsibility under the applicable regulations, which provide that inmates who are double celled are equally accountable for the property inside of the cell. (Id. at 85.) Hedrick contrasted actual possession with constructive possession and explained that "the element of constructive possession has been met as both you and your cellmate shared the same cell and actual physical possession is not necessary." (Id.)

At the third level of review, Appeals Examiner J. Dominguez, captain, found that Roldan failed to support his appeal with sufficient evidence and that the hearing officer appropriately found him guilty based on the preponderance of the evidence. (Id. at 87.) Captain Dominguez noted, as the second level reviewer had, that a loss of credits had not been imposed upon Petitioner due to the hearing not being conducted within thirty days of the issuance of the RVR. (Id.)

Following the completion of the administrative review process, Roldan filed a petition for writ of habeas corpus in the Superior Court of California, County of Imperial on October 2, 2017. (Id. at 93.) The court determined the basis for the petition appeared to be Petitioner's allegation that he "did not own or control contraband which formed the basis for the Rules Violation Report, because Petitioner's cellmate, Inmate Aldana, claimed ownership for personal use." (Id. at 95.) The court denied the petition as there was "some evidence" to support the guilty finding because "the evidence was clear that the drugs were found in a cell of which Petitioner was an occupant and the quantity and packaging were consistent with possession with the intent to distribute." (Id. at 97.) The court also noted that Roldan could have suffered the potential loss of as many as 180 days of good time credits but did not because the hearing was held outside of 30 days of the RVR. (Id.)

Petitioner next filed a petition for writ of habeas corpus in the California Court of Appeal. (Id. at 101, 103.) He argued that the disciplinary decision violated his right to due process because "the evidence established at most his constructive possession of the heroin belonging to his cellmate, not any involvement in actual sale or distribution of the

heroin or intent to do so." (Id. at 101.) On November 7, 2017, the court of appeal determined that Petitioner was not entitled to habeas corpus relief because he did not lose any credits as a result of the disciplinary decision, and the loss of privileges and other penalties imposed upon him did not implicate the due process clause or create the right to judicial review. (Id. at 103.) Moreover, the court stated that even if Roldan had set forth a claim subject to judicial review, there was "some evidence" to support the disciplinary decision. (Id.) The court found, "The discovery of [eleven] bindles of heroin in a location to which both cellmates apparently had access supports an inference Roldan and his cellmate intended to introduce the heroin into the prison for sale or distribution[.]" (Id.) Thus, the petition was denied. (Id.) Petitioner next filed a petition for writ of habeas corpus before the California Supreme Court in which he raised the same claims as asserted in the lower courts. (Pet. 4, 70, ECF No. 1.) The petition was summarily denied on April 11, 2018. (Id. at 70.)

Roldan filed his federal Petition for Writ of Habeas Corpus on August 27, 2018 [ECF No. 1]. He raises two grounds for relief. First, he argues the disciplinary decision violated his due process rights under Superintendent v. Hill, 472 U.S. 445 (1985), because there was no evidence that the heroin found in his cell was to be used for sale or distribution rather than for personal use. (Pet. 11-14, ECF No. 1.) Second, Roldan contends the disciplinary decision violated his due process rights because it deprived him of the ability to earn worktime credits, negatively impacted his parole eligibility, and resulted in an atypical sanction that imposed a significant hardship upon him because of his loss of visiting privileges. (Id. at 15-19.)[4] Petitioner requests that the court issue a

---

[4] In his caption for this claim, Petitioner adds that the hearing officer's findings violated the Equal Protection Clause. The Equal Protection Clause of the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The arguments raised in support of Roldan's second ground for relief describe the deprivation of a liberty interest. (Pet. 15-19, ECF No. 1.) Petitioner does not set forth any facts or authorities upon which the Court could construe this as an equal protection claim, and thus the Court construes it as a due process claim.

writ of habeas corpus voiding the guilty finding of the disciplinary proceeding, restoring 365 days of work credit loss, and expunging all references to the charge from his prison file. (Id. at 20.)

## III. LEGAL STANDARDS

Roldan's Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v. Murphy, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted unless the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C.A. § 2254(d) (West 2006); Early v. Packer, 537 U.S. 3, 8 (2002).

A federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. See Yarborough v. Gentry, 540 U.S. 1, 4 (2003); Medina v. Hornung, 386 F.3d 872, 877 (9th Cir. 2004). In order to grant relief under § 2254(d)(2), a federal court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." See Taylor v. Maddox, 366 F.3d 992, 1001 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases or decided a case differently than the Supreme Court on a set of materially indistinguishable facts. See Bell v. Cone, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. Id. Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be

"objectively unreasonable." See Lockyer v. Andrade, 538 U.S. 63, 75 (2003). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate-court decision and presumes it provides the basis for the higher court's denial of a claim or claims. See Ylst v. Nunnemaker, 501 U.S. 797, 805-06 (1991). If the dispositive state-court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. See Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000), overruled on other grounds by Andrade, 538 U.S. at 75-76; accord Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). A state court need not cite Supreme Court precedent when resolving a habeas corpus claim. See Early, 537 U.S. at 8. "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" id., the state-court decision will not be "contrary to" clearly established federal law. Id. Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." Andrade, 538 U.S. at 72.

### IV. DISCUSSION

#### A. Motion to Dismiss

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the petition and any attached exhibits that the

8

petitioner is not entitled to relief in the district court . . . ."  Rule 4, Rules Governing Section 2254 Cases foll. 28 U.S.C.A. § 2254; see also White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989).  Respondent moves to dismiss the Petition on the following grounds:  federal habeas corpus jurisdiction is lacking because Petitioner cannot establish that a successful challenge to his disciplinary violation will necessarily lead to his immediate or earlier release from confinement; Petitioner's claim that the disciplinary violation prohibited him from earning worktime credits fails to state a federal question and is unexhausted; Petitioner's claim that the disciplinary violation deprived him of family visits fails to state a federal question and is unexhausted; and Petitioner's equal protection claim is insufficiently pleaded.  (Mot. Dismiss Attach. #1 Mem. P. & A. 7-16, ECF No. 9.)  The Court addresses these arguments below.[5]

### B. Federal Habeas Jurisdiction

Respondent first contends that federal habeas jurisdiction is lacking because Roldan did not lose any credits as a result of the challenged disciplinary violation.  (Id. at 7.)  Respondent argues that Petitioner thus cannot establish that a successful challenge to his disciplinary violation will necessarily lead to his immediate or earlier release from confinement.  (Id. at 8.)  Although Roldan did not file an opposition to Respondent's motion to dismiss, he alleges in his Petition that the disciplinary decision impacted the length of his confinement because it prohibited him from receiving one year of sentence-reducing credit that he would have earned had he remained assigned to his prison job.  (Pet. 16, ECF No. 1.)  He also alleges the disciplinary finding that he had distributed heroin in prison would negatively affect the parole board's decision on his parole.  (Id. at 17.)

A claim challenging a disciplinary conviction resulting in a loss of time credits is

---

[5] As set forth in supra note 4, the Court does not construe the Petition as stating an equal protection claim.  The Court therefore does not further address Respondent's argument that Petitioner's equal protection claim is insufficiently pleaded.

cognizable under federal habeas jurisdiction if restoration of credits would result in a speedier release from prison. Preiser v. Rodriguez, 411 U.S. 475, 487 (1973). When expungement of a disciplinary violation and restoration of time credits would not necessarily result in a speedier release, the prisoner may not seek relief by habeas petition. Nettles v. Grounds, 830 F.3d 922, 935 (9th Cir. 2016) (en banc).

In this case, Roldan is serving an indeterminate sentence of seventy-nine years to life. As of late 2018, Roldan's minimum eligible parole date ("MEPD") was August 10, 2062. (Not. Lodgment Attach. #1 [Legal Status Summary], at 1, ECF No. 10.) In California, prisoners with life terms may not be released before their MEPD unless they are eligible for earlier release pursuant to their youth offender parole eligibility date or elderly parole eligible date. Cal. Penal Code § 3041(a)(4) (West Supp. 2018). One year before a prisoner's MEPD, a panel of the Board of Parole Hearings will meet with the prisoner and determine if he is suitable for parole. Id. § 3041(a)(2). Suitability for parole depends on the Board's assessment of a number of factors relating to the risk of public safety. See id. § 3041(b); Cal. Code Regs. tit. 15, § 2402 (2019) (listing information considered). The parole board must consider "[a]ll relevant, reliable information" in determining suitability for parole. Cal. Code Regs. tit. 15, § 2281(b). Credits earned by an inmate serving an indeterminate life sentence go toward advancing his MEPD, but the MEPD does not determine when a prisoner will actually be released. See In re Jenkins, 50 Cal. 4th 1167, 1179, 240 P.3d 260, 269, 116 Cal. Rptr. 3d 790, 801 (2010).

If Roldan succeeded in expunging his disciplinary conviction, having the one year loss of his prison job restored, and earning the one year of worktime credits he purportedly lost, he might receive an earlier MEPD and an earlier parole suitability hearing, but his confinement will not necessarily be shorter as he will not be given a release date until he is found suitable for parole, and his disciplinary record is only one factor in making the suitability determination. See Nettles, 830 F.3d at 935 (citing Cal. Code Regs. tit. 15, § 2281(b)); see also Ramirez v. Galaza, 334 F.3d 850, 859 (9th Cir. 2002) (holding that successful challenge to prison disciplinary violation would not

necessarily shorten length of confinement because parole board can deny parole for other reasons). "Because the parole board has the authority to deny parole on the basis of any of the grounds presently available to it, . . . the presence of a disciplinary infraction does not compel the denial of parole, nor does an absence of an infraction compel the grant of parole." Nettles, 830 F.3d at 935 (citation and quotations omitted). The potential for an earlier MEPD and earlier parole hearing, therefore, is not sufficient to confer habeas jurisdiction. See, e.g., Pettis v. Asuncion, Case No. CV 16-4241 CBM(JC), 2017 WL 927626, at *5 (C.D. Cal. Jan. 26, 2017), adopted by 2017 WL 923895 (C.D. Cal. Mar. 8, 2017) ("If petitioner were to have the 61-day credit loss restored and the disciplinary action expunged from his record, it might lead to an earlier MEPD and initial parole board hearing, but it would not necessarily lead to an earlier release from confinement."); Nguyen v. Paramo, Case No. 17cv521 WQH (NLS), 2017 WL 3309804, at *2 (S.D. Cal. Aug. 3, 2017), adopted by 2017 WL 4272340 (S.D. Cal. Sept. 26, 2017) (finding lengthening of parole hearing date insufficient basis upon which to confer federal jurisdiction); Burton v. Adams, No. 1:09-CV-00354-JLT HC, 2010 WL 703182, at *6-7 (E.D. Cal. Feb. 25, 2010) ("The fact that Petitioner may legally accrue credits that can be used in the calculation of his MEPD has such an attenuated, remote, and speculative bearing upon the sentence that Petitioner may ultimately have to serve before being released on parole that the Court simply cannot predicate habeas jurisdiction upon it.").

Because success on Petitioner's claims would not necessarily lead to his immediate or earlier release from prison, federal habeas jurisdiction does not exist.

### C. Petitioner's Claimed Due Process Violations

Respondent next argues that Roldan's claim that the disciplinary decision deprived him of worktime credits and family visits in violation of his due process rights fails to state a cognizable federal habeas claim because the Due Process Clause is not implicated. (Mot. Dismiss Attach. #1 Mem. P. & A. 9-11, 13-14, ECF No. 9.) The Due Process Clause of the Fourteenth Amendment prohibits states from depriving persons of life, liberty, or property without "due process of law." U.S. Const. amend XIV. A liberty

interest that is protected by the Due Process Clause may arise from two sources—the Due Process Clause itself and by state law or regulations. <u>Meachum v. Fano</u>, 427 U.S. 215, 223-27 (1976). When the restraint upon a prisoner's liberty is so severe that it exceeds the inmate's sentence in an unexpected manner, protection under the Due Process Clause exists. See <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995) (citing <u>Vitek v. Jones</u>, 445 U.S. 480, 493 (1980) (holding that a liberty interest under the Due Process Clause itself when an inmate was transferred to a mental hospital); <u>Washington v. Harper</u>, 494 U.S. 210, 221-22 (1990) (finding a liberty interest under the Due Process Clause itself when a psychotropic drug was involuntarily administered to a prisoner)). Here, Respondent contends Petitioner's loss of the ability to earn worktime credits resulting from his disciplinary proceeding was not so severe as to implicate the Due Process Clause of its own force. (Mot. Dismiss Attach. #1 Mem. P. & A. 10, ECF No. 9.) The Court agrees, as the loss of the ability to earn worktime credits does not subject Petitioner to conditions that exceed his sentence in an unexpected manner. See <u>Sandin</u>, 515 U.S. at 484; see also <u>Bennett v. Curry</u>, No. C 07-2261 SI (pr), 2008 WL 2563223, at *4 (N.D. Cal. June 23, 2008).

When the deprivation of a liberty interest is not so severe that it implicates the Due Process Clause of its own force, state laws or regulations may create a liberty interest. "In determining whether [a petitioner] obtained a liberty interest, one of the relevant questions is whether he suffered a 'sufficiently grievous loss to trigger the protection of due process.'" <u>Kelch v. Dir., Nevada Dep't of Prisons</u>, 10 F.3d 684, 687 (9th Cir. 1993). One must have more than an abstract need or unilateral expectation of a right in order for it to be protected by the Due Process Clause; one must "have a legitimate claim of entitlement to it." <u>Id.</u> A petitioner claiming his federal due process rights were violated during a prison disciplinary proceeding must demonstrate the disciplinary actions that resulted from the proceeding either (1) imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or (2) "will inevitably affect the duration of his sentence." <u>Sandin</u>, 515 U.S. at 484, 486-87.

In the present case, the Court agrees with Respondent's argument that Petitioner has failed to establish either of the two Sandin prongs. With respect to the first prong, Respondent contends that Roldan cannot successfully argue that his temporary inability to earn worktime credits constitutes an "atypical and significant hardship" when he has no right to earn such credits in the first place. (Mot. Dismiss Attach. #1 Mem. P. & A. 10-11, ECF No. 9.) Under California Penal Code section 2933, prisoners are eligible to earn day-for-day worktime credits, subject to the credit limitation of section 2933.1. Cal. Penal Code §§ 2933(a), 2933.1. Section 2933 explicitly states that the ability to earn "[w]orktime credit is a privilege, not a right." Id. § 2933(b). The Ninth Circuit has determined that section 2933 does not create a liberty interest in worktime credits. See Brodheim v. Rowland, 993 F.2d 716, 717 (9th Cir. 1993); Touissant v. McCarthy, 801 F.2d 1080, 1094-95 (9th Cir. 1986) ("Although the California legislature intended the worktime sentence reducing scheme to instill a work ethic, . . . it did not create an absolute right to participate in work programs; the legislature created only a 'reasonable opportunity.'"). See also Sakellaridis v. Davey, No. 1:14-CV-01527-LJO-GSA-HC, 2015 WL 4394650, at *1 (E.D. Cal. July 16, 2015) (finding no protected liberty interest in earning worktime credits despite 2010 amendment to section 2933); Christ v. Blackwell, No. 2:10-CV-0760-EFB P, 2016 WL 4161129, at *13 (E.D. Cal. Aug. 4, 2016) (same). The Court finds Petitioner has no protected liberty interest in earning worktime credits under section 2933, and thus the temporary inability to earn the credits does not constitute an atypical and significant hardship.

Petitioner has also failed to assert any facts that demonstrate that the deprivation of the opportunity to earn worktime credits "will inevitably affect the duration of his sentence," and thus has failed to satisfy the second prong in Sandin. As discussed above, worktime credits earned by Roldan, who is serving an indeterminate life sentence, may affect his MEPD but have no direct impact on the amount of time he must actually serve. See Jenkins, 50 Cal. 4th at 1179. It is the parole board's decision about Roldan's suitability for parole, not his accumulation of worktime credits, that will determine

Petitioner's release date from prison. Any negative effect that Petitioner's loss of credits may have on his suitability from parole is too attenuated to "inevitably affect" the duration of his prison term.

With respect to Roldan's claim that the disciplinary decision improperly deprived him of family visitations, the Court agrees with Respondent that the Due Process Clause is not implicated. California's family visitation regulations do not create a liberty interest for inmates. See Gerber v. Hickman, 291 F.3d 617, 621 (9th Cir. 2002) ("[I]t is well-settled that prisoners have no constitutional right while incarcerated to contact visits or conjugal visits."); Sandin, 515 U.S. at 483-84 (a constitutionally protected liberty interest arises only when a restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life").

Because Petitioner's alleged lost opportunity to earn worktime credits and to receive family visits does not implicate his federal due process rights, he has not set forth a cognizable federal habeas claim.

### D. Exhaustion

Respondent contends that Roldan's claim that he lost the opportunity to earn worktime credits and to receive family visits is unexhausted. (Mot. Dismiss Attach. #1 Mem. P. & A. 11-14, ECF No. 9.) Given the above findings that federal habeas jurisdiction does not exist and that Petitioner has not set forth a cognizable federal habeas claim, the Court need not address Respondent's exhaustion arguments.

### V. CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge John A. Houston under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California. **IT IS HEREBY RECOMMENDED** that Respondent's motion to dismiss be **GRANTED**, that the Petition be **DISMISSED WITH PREJUDICE**, and that judgment be entered accordingly.

1 **IT IS HEREBY ORDERED** that any party to this action may file written objections with the Court and serve a copy on all parties **July 19, 2019**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any Reply to the Objections shall be filed with the Court and served on all parties **August 2, 2019**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

Dated: June 28, 2019

Hon. Ruben B. Brooks
United States Magistrate Judge